******************************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.

******************************************************

CATHERINE LEDERLE *v.* STEVAN SPIVEY
(AC 37755)

DiPentima, C. J., and Beach and Danaher, Js.*

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dis-
solved, appealed to this court from the judgment of the trial court
granting the plaintiff's motion for attorney's fees. Following the dissolu-
tion of the parties' marriage, the defendant had filed a motion to open
the dissolution judgment, which the trial court denied, and the defendant
appealed from that judgment to this court, which upheld the denial of
that motion. The plaintiff thereafter filed a motion for attorney's fees
incurred in defending that appeal. In granting the plaintiff's motion for
attorney's fees, the trial court concluded that the appeal concerning the
motion to open lacked any indicia of a colorable claim and was brought
in bad faith, and, therefore, it awarded attorney's fees pursuant to the
bad faith exception to the general rule that attorney's fees are not
allowed to the successful party in the absence of a contractual or statu-
tory exception. Pursuant to the bad faith exception, in order to impose
sanctions pursuant to its inherent authority, the trial court must find
both that the litigant's claims were entirely without color and that the
litigant acted in bad faith, and the court must make those findings with
a high degree of specificity. *Held* that the trial court abused its discretion
in awarding attorney's fees to the plaintiff pursuant to the bad faith
exception: although that court found that the defendant had acted in
bad faith and supported that finding with a high degree of specificity,
it failed to delineate its finding that the defendant's appeal concerning
the motion to open lacked any indicia of a colorable claim with clear
evidence and a high degree of specificity; moreover, there was no indica-
tion in the trial court's memorandum of decision that it applied the
correct standard for colorability applicable to a party, as opposed to
an attorney, and that it therefore considered whether the defendant's
principal claim in his previous appeal was so lacking in factual and legal
support that a reasonable person could not have concluded that the
basis of the claim might be established; accordingly, a new hearing is
required at which the trial court must apply the proper standard for
colorability determinations applicable to a party, and its factual findings
thereon have to be made with a high degree of specificity.

Argued January 9—officially released July 18, 2017

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Abery-Wetstone, J. [dissolution
judgment]; Emons, J. [motion for attorney's fees].)

*Procedural History*

Action for the dissolution of a marriage, and for other
relief, brought to the Superior Court in the judicial dis-
trict of Stamford-Norwalk and tried to the court, *Abery-
Wetstone, J.*; judgment dissolving the marriage and
granting certain other relief; thereafter, the court,
*Emons, J.*, denied the defendant's motion to open, and
the defendant appealed to this court, which affirmed
the judgment; subsequently, the court, *Emons, J.*,
granted the plaintiff's motion for attorney's fees, and
the defendant appealed to this court. *Reversed; fur-
ther proceedings.*

*David DeRosa*, with whom was *Paul Greenan*, for
the appellant (defendant).

*Tara C. Dugo*, with whom, on the brief, was *Norman*

*A. Roberts II*, for the appellee (plaintiff).

*Opinion*

DiPENTIMA, C. J. The defendant, Stevan Spivey, appeals from the judgment of the trial court awarding $30,000 in attorney's fees to the plaintiff, Catherine Lederle. On appeal, the defendant claims that the court abused its discretion in (1) awarding attorney's fees based on its conclusion that his claims in a prior appeal were entirely without color and that he acted in bad faith, and (2) finding that an award of $30,000 in attorney's fees was reasonable under the circumstances of this case. We agree with the defendant's first claim that the court abused its discretion in awarding attorney's fees. Accordingly, we reverse the judgment awarding the plaintiff $30,000 in attorney's fees and remand the matter for a determination of whether the defendant's claims in his previous appeal were entirely without color.

The following facts and procedural posture, as outlined in *Lederle* v. *Spivey*, 151 Conn. App. 813, 814–16, 96 A.3d 1259, cert. denied, 314 Conn. 932, 102 A.3d 84 (2014), are relevant to our resolution of this appeal. "The parties were married in Darien on December 31, 1998. One child was born of the marriage in 2000. Thereafter, the marriage broke down irretrievably, and, in March, 2005, the plaintiff commenced an action seeking to dissolve the marriage. On May 2, 2007, the court, *Abery-Wetstone, J.*, rendered a judgment of dissolution. As part of this decision, the court acknowledged the plaintiff's claim that she needed to move to Virginia in order to remain competitive in her employment with Lexmark, and found that it was in the best interest of the child to relocate with her to Virginia. The defendant appealed from the judgment, arguing, inter alia, that the court improperly permitted the plaintiff to relocate with their minor child to Virginia. We affirmed the judgment of the court, and our Supreme Court denied certification to appeal. *Lederle* v. *Spivey*, 113 Conn. App. 177, 965 A.2d 621, cert. denied, 291 Conn. 916, 970 A.2d 728 (2009).

"The defendant subsequently filed an amended motion to open the judgment, in which he claimed that [t]he plaintiff, in her trial testimony committed fraud with respect to the issue of her Lexmark employment and specifically whether or not [her Lexmark employment position] was available in Virginia on the dates testified to." (Internal quotation marks omitted.) *Lederle* v. *Spivey*, supra, 151 Conn. App. 814–15. According to the defendant, "[t]he plaintiff had a continuing duty to disclose the status of her job situation with Lexmark after [the May 2, 2007] judgment [of the trial court], and before the Appellate Court issued a memorandum of decision in [March] 2009." (Internal quotation marks omitted.) Id., 815. The defendant further argued that the plaintiff's failure to disclose the status of her job situation with Lexmark constituted fraud "with respect

to a material fact or facts which ultimately led to [the trial] court's conclusion that [the] plaintiff and the minor child should be permitted to relocate from the state of Connecticut to the state of Virginia for primarily employment purposes." (Internal quotation marks omitted.) Id.

"The court, *Emons, J.*, heard oral argument on the motion and, after receiving a memorandum of law from counsel for each party in support of their position, issued a memorandum of decision denying the motion to open on January 28, 2013. In reaching its decision, the court found that [a]fter the May 2, 2007 judgment, on June 5, the plaintiff lost her employment at Lexmark. . . . On or about August 20, 2007, the plaintiff relocated to Virginia and at or about the same time, began a new job at Xerox, also located in Virginia. The court noted that Judge Abery-Wetstone found numerous reasons why relocation was in the best interest of the minor child and that no single factor controlled the decision of the court. On the basis of the foregoing, the court held that while the plaintiff did have a duty to disclose that she lost her Lexmark job and procured a new one at Xerox, prior to the Appellate [Court's] decision, her failure to disclose does not constitute fraud." (Internal quotation marks omitted.) Id., 815–16. The defendant appealed from that decision.

In his appeal, the defendant claimed "that the [trial] court: (1) improperly held a portion of the hearing on the motion to open in chambers and off the record; and (2) abused its discretion by deciding the motion to open, which was based on a claim of fraud and therefore involved a question of material fact, without the benefit of sworn testimony or other evidence." Id., 814. This court determined that it could not review the first issue because the record was inadequate for review on appeal. Id., 816. With respect to the second issue, this court determined that "the defendant's motion to open based on fraud, which was exclusively predicated upon the plaintiff's alleged failure 'to disclose the status of her job situation with Lexmark *after* [the trial court's] judgment [of dissolution] . . . and *before* the Appellate Court [rendered judgment],' fail[ed] as a matter of law." (Emphasis in original.) Id., 819. We then explained that the cases that both parties relied on, i.e., *Weinstein* v. *Weinstein*, 275 Conn. 671, 882 A.2d 53 (2005), and *Billington* v. *Billington*, 220 Conn. 212, 595 A.2d 1377 (1991), merely establish a continuing duty to disclose pertinent financial information until the judgment of dissolution is final *and not during the appeal. Lederle* v. *Spivey*, supra, 151 Conn. App. 819. In determining that the defendant's claim failed as a matter of law, this court did not address whether Judge Emons abused her discretion in deciding the motion to open based on fraud without the benefit of sworn testimony or other evidence. See id. Therefore, we affirmed the judgment of the trial court on July 29, 2014, and our Supreme

Court denied certification to appeal. *Lederle* v. *Spivey*, 314 Conn. 932, 102 A.3d 84 (2014).

On March 11, 2013, during the pendency of the appeal in *Lederle* v. *Spivey*, supra, 151 Conn. App. 813, the plaintiff filed a motion for attorney's fees incurred in defending the defendant's "appeal of the trial court's January 28, 2013 judgment denying his motion to open." The plaintiff also filed a motion for termination of stay of proceedings on January 20, 2015. Judge Emons held a hearing on the motion for attorney's fees on October 30, 2013, and continued the matter until after the appeal was resolved. Additional hearings were held on February 10, 11 and 20, 2015. On March 4, 2015, the trial court issued a memorandum of decision in which it granted the plaintiff's motion for attorney's fees and her motion for termination of stay of proceedings. In granting the plaintiff's motion, the trial court found "that the appeal filed by the defendant lacked any indicia of a colorable claim (wholly without color) and was brought in bad faith. After an evidentiary hearing on the reasonableness of the plaintiff's fees, the court GRANTS [the] plaintiff's motion and awards attorney fees in the amount of thirty thousand dollars ($30,000)." On March 11, 2015, the defendant filed this appeal. Additional facts will be set forth as necessary.

In the present appeal, the defendant claims that the trial court abused its discretion in awarding attorney's fees on the basis of its conclusion that his prior appellate claims were entirely without color and that he had acted in bad faith. Specifically, the defendant argues that there was no foundation in the trial court and appellate court records for the trial court to find that his appeal from the denial of his motion to open lacked any indicia of a colorable claim or that it was brought in bad faith,[1] nor did the court's memorandum of decision set forth its factual findings with a high degree of specificity.[2] The plaintiff counters that the trial court had ample evidence on which to base its findings and order in granting her motion for attorney's fees. We agree with the defendant that the court abused its discretion in awarding attorney's fees because its decision lacked the "high degree of specificity" as to its finding that the defendant's appeal was entirely without color, which is required under *Maris* v. *McGrath*, 269 Conn. 834, 848, 850 A.2d 133 (2004).[3]

The following additional facts and procedural history are relevant to our resolution of this claim. The court issued a memorandum of decision on March 4, 2015, in which it granted the plaintiff's motion for attorney's fees, finding, inter alia, that the defendant's claim that the court denied his motion to open without the benefit of sworn testimony or other evidence lacked any indicia of a colorable claim and was brought in bad faith.[4] In that decision, the court found that "the transcripts of an October 24, 2012 hearing . . . demonstrate that the

court inquired of both counsel whether evidence was a necessary part of the 'but for' legal question as to whether the failure to disclose a new job could have arisen to a finding of 'fraud.' " The court's decision continues by stating: "Even more telling, was the colloquy that the court had with both clients, explaining to them that the court would entertain a legal issue with facts as stipulated in simultaneous briefs by counsel. As the court explained, depending upon the decision, further evidentiary hearing and/or appeals might be necessary. . . . As is clear from the October 24, 2012 transcripts, the attorneys, in the presence of their clients and on the record, agreed to file simultaneous briefs with factual stipulations . . . copies of [the] defendant's and [the] plaintiff's simultaneous briefs together with copies of pages 8 [through] 15 of [the] plaintiff's appellee's brief analyzing all factual stipulations are attached as appendix C. There is no conceivable way that either [the] defendant or his appellate counsel did not have this information or evidence available to them prior to bringing the appeal." The court's decision further noted that "the defendant and his appellate counsel perpetuated an appeal knowing that counsel, the court, and the clients had agreed to proceed in a particular way. Nevertheless, in a bad faith and disingenuous way, the defendant and appellate counsel . . . proceeded with an appeal that was wholly lacking a factual or legal basis." Accordingly, the trial court granted the motion for attorney's fees pursuant to the bad faith exception set forth in *Maris* v. *McGrath*, supra, 269 Conn. 844–46. On March 11, 2015, the defendant filed this appeal, claiming that the court abused its discretion in awarding attorney's fees.

We begin by setting forth our well established standard of review and applicable legal principles that govern our resolution of this claim. "The abuse of discretion standard of review applies when reviewing a trial court's decision to [grant or] deny an award of attorney's fees. . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Citations omitted; internal quotation marks omitted.) *Munro* v. *Munoz*, 146 Conn. App. 853, 858, 81 A.3d 252 (2013).

"[T]he common law rule in Connecticut, also known as the American Rule, is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception." (Internal quotation marks omitted.) *Berzins* v. *Berzins*, 306 Conn. 651, 661, 51 A.3d 941 (2012). "Th[is] rule does not apply, however, where the opposing party has acted in bad faith." (Internal quotation

marks omitted.) *Munro* v. *Munoz*, supra, 146 Conn. App. 858. This exception to the American rule often is referred to as the bad faith exception. See *Rinfret* v. *Porter*, 173 Conn. App. 498, 509 n.14,      A.3d      (2017).

Pursuant to the bad faith exception, "[i]t is generally accepted that the court has the inherent authority to assess attorney's fees when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons. . . . This bad faith exception applies, not only to the filing of an action, but also in the conduct of the litigation." (Internal quotation marks omitted.) *Munro* v. *Munoz*, supra, 146 Conn. App. 858. "It applies both to the party and his counsel. . . . Moreover, the trial court must make a specific finding as to whether counsel's [or a party's] conduct . . . constituted or was tantamount to bad faith, a finding that would have to precede any sanction under the court's inherent powers to impose attorney's fees for engaging in bad faith litigation practices." (Internal quotation marks omitted.) *Kupersmith* v. *Kupersmith*, 146 Conn. App. 79, 97, 78 A.3d 860 (2013).

"[A] litigant seeking an award of attorney's fees for the bad faith conduct of the opposing party faces a high hurdle." *Berzins* v. *Berzins*, supra, 306 Conn. 662. "To ensure . . . that fear of an award of attorney's fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the bad-faith exception absent both clear evidence that the challenged actions are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes . . . and a high degree of specificity in the factual findings of [the] lower courts." (Internal quotation marks omitted.) *Maris* v. *McGrath*, supra, 269 Conn. 845; see also *Kupersmith* v. *Kupersmith*, supra, 146 Conn. App. 97. Thus, our Supreme Court held that "*Maris* makes clear that in order to impose sanctions pursuant to its inherent authority, the trial court must find *both* [1] that the litigant's claims were entirely without color *and* [2] that the litigant acted in bad faith." (Emphasis in original.) *Berzins* v. *Berzins*, supra, 663.

Accordingly, to determine whether the litigant's claims were entirely without color, the court must apply "[t]he standard for colorability [which] varies depending on whether the claimant is an attorney or a party to the litigation. . . . If the claimant is an attorney, a claim is colorable if a reasonable attorney could have concluded that facts supporting the claim might be established, not whether such facts had been established. . . . If the claimant is a party to the litigation, a claim is colorable, for purposes of the bad faith exception to the American rule, if a reasonable person, given his or her first hand knowledge of the underlying matter, could have concluded that the facts supporting the claim might have been established." (Citations omitted;

internal quotation marks omitted.) *McKeon* v. *Lennon*, 131 Conn. App. 585, 612–13, 27 A.3d 436, cert. denied, 303 Conn. 901, 31 A.3d 1178 (2011). Significantly, the sanctions in the present case were imposed against the defendant and not his attorney, and, thus, the latter standard for colorability guides our analysis.

On the other hand, in determining whether the litigant acted in bad faith, the court need only apply one standard. According to the bad faith standard, "the court must assess whether there has been substantive bad faith as exhibited by, for example, a party's use of oppressive tactics or its wilful violations of court orders; [t]he appropriate focus for the court . . . is the conduct of the party in instigating or maintaining the litigation." (Internal quotation marks omitted.) *Berzins* v. *Berzins*, supra, 306 Conn. 662.

"Moreover, our Supreme Court's holding in *Berzins* makes clear that the two required findings, i.e., colorability and bad faith, must be *separate* from each other"; *Rinfret* v. *Porter*, supra, 173 Conn. App. 509–10 (referring to *Berzins* v. *Berzins*, supra, 306 Conn. 663); and the court must set forth its factual findings with "a high degree of specificity." *Maris* v. *McGrath*, supra, 269 Conn. 848.

Mindful of the high degree of specificity standard, we conclude that the findings of the trial court in the present case do not satisfy the requirement in *Berzins* that the court find "*both* that the litigant's claims were entirely without color *and* that the litigant acted in bad faith." (Emphasis in original.) *Berzins* v. *Berzins*, supra, 306 Conn. 663; see *Perry* v. *Perry*, 312 Conn. 600, 630, 95 A.3d 500 (2014) (Supreme Court concluded that trial court, guided by *Maris*, was required to find both that movant's claims challenging attorney's fees were entirely without color and that he acted in bad faith, but "the trial court never mentioned *Maris* in its memorandum of decision. Therefore, the trial court did not make the required findings under *Maris* and, consequently, the [moving party] is entitled to a new hearing at which the trial court applies the proper standard."); see also *Light* v. *Grimes*, 156 Conn. App. 53, 68, 111 A.3d 551 (2015) (this court reversed award for attorney's fees when "although the [trial] court did find that the defendant's motion . . . was wasteful and bordering on frivolous, the court did not find that the defendant's claims were entirely without color and that he acted in bad faith"). Specifically, although the trial court here found that the defendant acted in bad faith and supported that finding with a high degree of specificity in its memorandum of decision, it did not make similarly specified findings as to colorability. Cf. *Berzins* v. *Berzins*, supra, 306 Conn. 663 (reversing trial court's award of attorney's fees based on conclusion that "the court did not make a separate finding that the administrator acted in bad faith"); see generally *Kupersmith* v. *Kuper-*

*smith*, supra, 146 Conn. App. 98 ("[t]he court found generally both that the defendant's motion was entirely without color and that he acted in bad faith, yet the court did not support that finding with factual specificity").

Specifically, the trial court incorrectly set forth the applicable standard to determine whether a claim is colorable for purposes of the bad faith exception to the American rule. Because this case involved sanctions in the form of attorney's fees for the bad faith conduct by the defendant, the court should have applied the standard for colorability applicable to a party and not an attorney. To reiterate, that standard provides that if the claimant is a party, rather than an attorney, "a claim is colorable, for purposes of the bad faith exception to the American rule, if a reasonable person, given his or her first hand knowledge of the underlying matter, could have concluded that the facts supporting the claim might have been established." (Internal quotation marks omitted.) *Maris* v. *McGrath*, supra, 269 Conn. 847. Our Supreme Court has previously concluded that "[t]his is an appropriate reformulation of the standard, cast in terms applicable to a party, because it focuses on the party's firsthand knowledge of the facts and whether, given that knowledge, the party reasonably could have concluded that his or her claim might be established. This standard, moreover, takes into account the capacity of the party for truthfully or untruthfully recounting those facts, as well as the capacity for honest mistakes, recollections and disagreements over those facts." Id.

In the present case, the trial court's decision did not apply the aforementioned standard to determine whether the defendant's appeal was entirely without color. Rather, the trial court's decision noted: "*Maris* makes clear that in order to impose sanctions pursuant to its inherent authority, the trial court must find both that the litigant's claims were entirely without color and that the litigant acted in bad faith." In applying the foregoing authority to determine the issue of colorability, the trial court merely stated: "After reviewing the evidence that the defendant and/or his attorney had at the time that the appeal was taken and during the time that it was presented, the court would be hard-pressed to find that there was an existing colorable claim on appeal." Because the trial court did not apply the correct standard for colorability in its memorandum of decision, it is not clear whether it assessed the issue of colorability focusing on the defendant's firsthand knowledge of the facts and whether, given that knowledge, the defendant reasonably could have concluded that his claim might be established. See *Maris* v. *McGrath*, supra, 269 Conn. 847.

For example, in *Maris*, our Supreme Court applied the standard for colorability applicable to a party as

opposed to his attorney. Id., 848. The Supreme Court concluded "that the trial court was justified in making the award of attorney's fees" based on the specific findings it identified in its memorandum of decision. Id. In particular, in discussing the trial court's finding that the plaintiff's claim was entirely without color, our Supreme Court stated: "First, the court specifically found that the plaintiff repeatedly had testified untruthfully . . . . The court specifically identified all of the numerous instances in which the plaintiff had testified untruthfully, and it specifically found that the plaintiff's claims were wholly without merit . . . . Second, the matters about which the plaintiff repeatedly had testified untruthfully . . . were matters particularly within his firsthand knowledge . . . ." (Internal quotation marks omitted.) Id. The court then concluded that the trial court's finding that the plaintiff's claim was entirely without color was "based on ample and clear evidence, which the trial court specifically identified in its memorandum of decision." Id.

In *Keller* v. *Keller*, 167 Conn. App. 138, 150, 142 A.3d 1197 (2016), this court applied the foregoing standard for colorability applicable to a party and concluded: "The [trial] court clearly stated that even if the plaintiff's claims were true, no reasonable person would find that her actions were justified." We continued by noting that the trial court's finding that the plaintiff proceeded without colorable claims was sufficiently detailed in its decision. Id., 151.

In the present case, there is no indication in the trial court's memorandum of decision that it applied the appropriate standard for colorability and considered whether the defendant's principal claim in his previous appeal was so lacking in factual and legal support that a reasonable person could not have concluded that the basis of the claim might be established. Although the trial court's memorandum of decision did discuss the defendant's knowledge of a factual stipulation pertaining to the "but for" legal issue of fraud in the underlying motion to open, this finding appears to relate to its determination on bad faith and not its determination on colorability. Specifically, the trial court's memorandum of decision states: "At the very least, the defendant and his appellate counsel perpetuated an appeal knowing that counsel, the court, and the clients had agreed to proceed in a particular way. Nevertheless, in a bad faith and disingenuous way, the defendant and appellate counsel . . . proceeded with an appeal that was wholly lacking a factual and legal basis." There is no similar finding as to whether the defendant's claims were not colorable.

There are no further indications in the record that the court made other findings of fact to support its conclusion that the defendant's principal claim in his previous appeal was entirely without color. For these

reasons, we conclude that the present case is distinguishable from *Maris* and *Keller*, in which each court applied the appropriate standard for colorability and determined that the trial court's finding that the party acted without colorable claims was sufficiently detailed with a high degree of specificity. By contrast, the court in the present case did not delineate its finding of colorability with clear evidence and a high degree of specificity as required under our case law. *Berzins* v. *Berzins*, supra, 306 Conn. 663; *Maris* v. *McGrath*, supra, 269 Conn. 848. Therefore, the trial court failed to make the necessary finding pertaining to the colorability requirement of the bad faith exception set forth in *Maris*.

Accordingly, although the trial court found that the defendant acted in bad faith and supported that finding with a high degree of specificity in its factual findings, we conclude that it erred in applying *Maris* and subsequently awarding attorney's fees, as it failed to set forth its factual findings with "a high degree of specificity" concerning whether the defendant's previous appeal was entirely without color. *Maris* v. *McGrath*, supra, 269 Conn. 848; see also *Berzins* v. *Berzins*, supra, 306 Conn. 663. Moreover, there was no indication in the trial court's memorandum of decision that it applied the correct standard for colorability applicable to a party and considered whether the defendant's principal claim in his previous appeal was so lacking in factual and legal support that a reasonable person could not have concluded that the basis of the claim might be established. For the foregoing reasons, we conclude that the trial court abused its discretion in awarding attorney's fees pursuant to the bad faith exception of the American rule because the court did not apply the standard set forth in *Maris*. See *Maris* v. *McGrath*, supra, 269 Conn. 847–48. Therefore, a new hearing is required at which the trial court must apply the proper standard applicable to a party as set forth in *Maris*, and its factual findings thereon must be made with a high degree of specificity.

The judgment is reversed and the case is remanded for further proceedings on the plaintiff's motion for attorney's fees in accordance with the preceding paragraph.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] We note that the defendant further argued that the trial court's conclusion was based on its clearly erroneous finding that the parties entered into a factual stipulation as to their respective positions on the motion to open, on which it relied in denying that motion. This court reviews the trial court's findings of facts under the clearly erroneous standard of review. See *McKeon* v. *Lennon*, 131 Conn. App. 585, 612, 27 A.3d 436, cert. denied, 303 Conn. 901, 31 A.3d 1178 (2011). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id. Our review of the record reveals that at the October 24, 2012 hearing on the motion to open, the defendant's

trial counsel asserted that the issue of fraud was fundamentally a legal issue and the facts were not in dispute. Further, there was evidence that at the October 24, 2012 hearing the parties orally agreed to proceed with a stipulation of facts, which was memorialized subsequently in both parties' memoranda of law on the issue of fraud. Consequently, the defendant's argument fails.

[2] Pursuant to our case law, the trial court is obligated to "find *both* that the litigant's claims were entirely without color *and* that the litigant acted in bad faith"; (emphasis in original) *Berzins* v. *Berzins*, 306 Conn. 651, 663, 51 A.3d 941 (2012); and the court must set forth its factual findings with "a high degree of specificity" before awarding attorney's fees. *Maris* v. *McGrath*, 269 Conn. 834, 848, 850 A.2d 133 (2004).

[3] We disagree, however, with the defendant that the trial court erred in finding that his conduct in maintaining the previous appeal was in bad faith. The trial court summarized its finding that the defendant's conduct of maintaining the previous appeal was in bad faith by stating: "At the very least, the defendant and his appellate counsel perpetuated an appeal knowing that counsel, the court, and the clients had agreed to proceed in a particular way. Nevertheless, in a bad faith and disingenuous way, the defendant and appellate counsel . . . proceeded with an appeal that was wholly lacking a factual and legal basis." In reviewing this finding of bad faith under the clearly erroneous standard of review, we are convinced that the trial court's finding is sufficiently supported with a high degree of specificity in its memorandum of decision. See *Munro* v. *Munoz*, 146 Conn. App. 853, 861–62, 81 A.3d 252 (2013) ("Whether a party has acted in bad faith is a question of fact, subject to review only for clear error. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." [Citation omitted; internal quotation marks omitted.]). Therefore, contrary to the defendant's assertion, we conclude that the trial court's finding of bad faith was not clearly erroneous under the circumstances of this case. See *McKeon* v. *Lennon*, 131 Conn. App. 585, 612, 27 A.3d 436, cert. denied, 303 Conn. 901, 31 A.3d 1178 (2011). Because the trial court was obligated to "find *both* that the litigant's claims were entirely without color *and* that the litigant acted in bad faith"; (emphasis in original) *Berzins* v. *Berzins*, 306 Conn. 651, 663, 51 A.3d 941 (2012); before awarding attorney's fees, the primary focus of our analysis will therefore be on the court's finding that the defendant's previous appeal lacked any indicia of a colorable claim.

[4] Although the defendant claimed in the prior appeal "that the [trial] court: (1) improperly held a portion of the hearing on the motion to open in chambers and off the record; and (2) abused its discretion by deciding the motion to open, which was based on a claim of fraud and therefore involved a question of material fact, without the benefit of sworn testimony or other evidence"; *Lederle* v. *Spivey*, supra, 151 Conn. App. 814; our focus in the present appeal is on the latter of the defendant's claims, which we refer to as the principal claim in this appeal. As we discuss at greater length in this opinion, we are not convinced that the trial court set forth its findings with a high degree of specificity pertaining to its conclusion that the defendant's principal claim in the foregoing appeal was entirely without color. Therefore, because we conclude that the court failed to apply the correct standard to find that the defendant's principal claim was entirely without color, we need not address whether the other claim in his previous appeal was also entirely without color for purposes of the applicability of the bad faith exception to the American rule in the present appeal. *Munro* v. *Munoz*, 146 Conn. App. 853, 861, 81 A.3d 252 (2013) (before awarding attorney's fees "the court had to find *both* that the defendant's *claims* were entirely without color, and that he acted in bad faith" [emphasis added]).